IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | | |
|---|---|---|---|
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | ) ) ) | | |
| Plaintiff, | ) ) | | Civil Action No. 7:11cv411 |
| v. | ) ) | | |
| CHARLES PATRICK KING, et al., | ) ) | By: | Michael F. Urbanski United States District Judge |
| Defendants. | ) | | |

### MEMORANDUM OPINION

In this insurance interpleader case, plaintiff Hartford Life and Accident Insurance Company ("Hartford") asks the court to grant its motion for summary judgment, dismiss it from this action, and award it attorney's fees and costs. (Dkt. #15.) Defendant Charles P. King asks the court to grant his motions for default judgment and for summary judgment, ordering payment of the proceeds of the subject insurance policies to him. (Dkt. #s 17, 21.) For the reasons stated herein, all of these motions are **DENIED** at this time.

### I.

On August 26, 2011, Hartford filed a Complaint for Interpleader against Charles P. King, Joan E. Gnegy, and the Estate of Ann Gnegy King ("the Estate"), pursuant to Rule 22(a)(1) of the Federal Rules of Civil Procedure as stakeholder of the proceeds of two group insurance policies as a consequence of the death of Ann Gnegy King. The complaint alleges that the benefits payable under each of these insurance policies exceeds $75,000 and that the court has subject matter jurisdiction over this case on both federal question and diversity of citizenship

bases.[1]  Hartford requested and was granted leave to deposit with the court the $76,000 payable under the life policy, plus interest, and the $76,500 payable under the AD&D policy.  (Dkt. #s 2, 5, 9.)

The complaint alleges that Ann Gnegy King was killed on April 29, 2009, while inside her home.  The death certificate lists her cause of death as "[a]sphyxia by suffocation and blunt injuries to the head."  (Dkt. #1, Ex. C.)  The death certificate states that the injuries stemmed from an "[a]ssault[ ] by another."  Id.  Ann Gnegy King's husband, Charles King, was the sole named beneficiary under the life and AD&D policies.  The complaint recites that Ann Gnegy King had no children, and Joan Gnegy is her only surviving parent.  (Dkt. #1, ¶ 19.)  On May 28, 2009, Hartford received a claim from Charles King seeking benefits under the life policy.  After receiving the claim, Hartford contacted the Christiansburg Police Department and the Commonwealth's Attorney's Office for Montgomery County on multiple occasions and "[o]n all such occasions, Hartford Life was informed that Charles King was a suspect in the homicide investigation.  As of mid-July 2011, Hartford Life was informed that Charles King has not been ruled out as a suspect, and that the investigation is ongoing."  (Dkt. #1, ¶ 23.)

Paragraphs 25 through 29 of the complaint set forth Hartford's position that this case is appropriately filed as an interpleader proceeding under Rule 22.  These paragraphs state as follows:

> 25.  Hartford Life is unsure of the proper and lawful beneficiary to the benefits under the Life Policy and AD&D Policy.  Hartford Life does not dispute that these benefits are due.

---

[1] Ann Gnegy King obtained group life and group accidental death and dismemberment ("AD&D") policies through her employer, and the complaint alleges that both employer-sponsored group insurance policies are governed by the Employee Retirement Income Security Act of 1974.  See 29 U.S.C. § 1001, et seq. ("ERISA").  The complaint alleges that Hartford is a Connecticut corporation, having its principal place of business there, and that both individual defendants, Charles King and Joan Gnegy, are residents of Virginia.  See 28 U.S.C. §§ 1331 and 1332.

2

> 26. There are two or more claimants, who either are demanding or may demand the benefits payable under the policies. These claims would be adverse to one another and raise questions of fact and law that could not be resolved by Hartford Life without exposing it to the danger of additional litigation and/or multiple liability.
>
> 27. More specifically, in the event that Charles King is determined to be a "slayer" of Ann King under either federal or Virginia law, Hartford Life has a bona fide concern that payment to Charles King would subject it to additional litigation with and/or liability to Joan Gnegy, the Estate, and/or other claimants who may file claims seeking payment under the policies.
>
> 28. In the event that Charles King is determined to be a slayer, and therefore adjudged to have predeceased Ann King, Joan Gnegy, as Ann King's mother, would have a claim to the benefits payable under the Life Policy. Joan Gnegy likely would also be the ultimate recipient of the AD&D Policy benefits payable to the Estate (as well as any Life Policy benefits payable to the Estate).
>
> 29. Hartford Life is a disinterested stakeholder to this action, standing neutral as to any party that may claim entitlement to the benefits payable under the Life Policy and AD&D Policy. By way of this interpleader action, Hartford Life seeks certainty regarding the parties' respective rights to the benefits payable under these policies, as well as a discharge of Hartford Life's obligations under the policies.

(Dkt. #1, ¶¶ 25-29.) Thus, Hartford asserts, it is unsure of the proper and lawful beneficiary of Ann Gnegy King's life and AD&D policies and believes that paying the claim asserted by Charles King could subject it to additional litigation and/or liability if he is determined to be Ann Gnegy King's slayer under federal or Virginia law.

On September 21, 2011, Charles King filed an Answer asserting that Hartford "does owe the benefits to this defendant and no other beneficiary, as he is not responsible in any way for the death of his wife and, accordingly, is the only claimant entitled to receive money under that policy." (Dkt. #8, ¶ 5.) On October 31, 2011, Charles King, asserting that he is the Executor of the Estate, filed an Answer reinforcing Charles King's personal claim to the monies. (Dkt. #14,

3

¶ 6.)  The other named defendant, Joan Gnegy, has been served with the lawsuit and is plainly aware of its pendency, but she has not filed an answer.  Consequently, on November 22, 2011, Charles King filed a Motion for Default Judgment, asking the court to order that all of the insurance proceeds be paid to him as no other individual defendant had filed an answer.  (Dkt. #17.)  On January 10, 2012, Charles King filed a Motion for Summary Judgment stating "that he is the only defendant who has filed an Answer to the Interpleader, is the named entitled beneficiary under the policy . . . , and there is no reason to not award the proceeds of that policy to him."  (Dkt. #21.)

The court held oral argument on Hartford and Charles King's motions on January 13, 2012.  At that hearing, the court raised three issues:  (1) whether the court has subject matter jurisdiction over the case;[2] (2) whether, given the fact that Joan Gnegy had not filed an answer, the case involves competing claims meeting the requirements of Rule 22; and (3) whether a conflict of interest exists preventing counsel for Charles King to also represent the Estate.[3]

On the issue of the position of Joan Gnegy, the court was made aware that she was present in the courtroom at the hearing along with other family members.  The court asked Joan Gnegy if she was making a claim to the insurance monies, to which she replied: "I don't think he should get the insurance, because I think he killed Ann."  (Dkt. #29, at 12, Lines 1-2.)  The court assumed from this response that Joan Gnegy was, in fact, disputing Charles King's right to the insurance proceeds, advised her that she was late in filing an answer, and suggested that she consult with an attorney and seek leave of court to file a late answer if she so desired.  (Id. at 12,

---

[2] At the hearing, the court asked Hartford to file a supplemental memorandum addressing the issue of subject matter jurisdiction.  (See Dkt. #27.)

[3] Charles King appeared in this action as the executor of the Estate of Ann Gnegy King, deceased.  Hartford initiated this action against the Estate of Ann Gnegy King, which is a nullity.  See Idoux v. Estate of Helou, 279 Va. 548, 553, 691 S.E.2d 773, 776 (2010) (holding that Virginia statutes do not authorize an action against an "estate").  Accordingly, the court substitutes Charles King, Executor of the Estate of Ann Gnegy King as the proper party defendant in place of the Estate of Ann Gnegy King.

4

21-22.)  The court encouraged Joan Gnegy to act promptly to protect her rights.  (Id. at 22.)  The court also addressed the issue with counsel regarding the potential for a conflict of interest between the personal interest of Charles King and that of the Estate given the application of the Virginia slayer statute.  Before reaching this issue, however, the court stated that it needed to decide whether subject matter jurisdiction exists.  (Id. at 20-21.)

**II.**

The issue of the court's subject matter jurisdiction over this case is a bit nuanced.  Hartford brought this interpleader action under Rule 22, as opposed to the federal interpleader statute, 28 U.S.C. § 1335.  Rule and statutory interpleader differ in terms of what is required for diversity jurisdiction purposes.  Under Rule 22, the plaintiff-stakeholder's citizenship must be diverse from that of all of the claimants.  Statutory interpleader, on the other hand, calls for diversity of citizenship between adverse claimants.  Under statutory interpleader, the citizenship of the stakeholder is irrelevant for diversity jurisdiction purposes.  See 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1703 (3d ed. 2001) ("Another subject-matter jurisdiction difference between the two is that rule interpleader requires complete diversity of citizenship between the stakeholder and the claimants; statutory interpleader is satisfied by minimal diversity between or among the claimants."); 4 James Wm. Moore et al., Moore's Federal Practice ¶ 22.04[2][a] (3d ed. 1997) ("Assuming the amount in controversy requirement is satisfied, the stakeholder could invoke rule interpleader based on diversity of citizenship because there is complete diversity between the stakeholder, on the one hand, and the claimants, on the other.  It is immaterial that some claimants are co-citizens.  The question is whether all claimants are of diverse citizenship from the stakeholder.").

5

Upon review of Hartford's supplemental brief and after conducting further research into the subject matter jurisdiction of the court in a Rule 22 interpleader case such as this, it is clear that the court has diversity jurisdiction over this interpleader case brought pursuant to Rule 22, as the amount in controversy exceeds $75,000 and the citizenship of the stakeholder, Hartford, is diverse from each claimant. See Leimbach v. Allen, 976 F.2d 912, 916 (4th Cir. 1992); Equitable Life Assurance Soc'y of the U.S. v. Jones, 679 F.2d 356, 358 n.2 (4th Cir. 1982); Conn. Gen. Life Ins. Co. v. Riner, 351 F. Supp. 2d 492, 496 (W.D.Va. 2005).

The Fourth Circuit has not spoken as to whether federal question jurisdiction also may exist in this case because the insurance policies were employer-based and thus subject to ERISA. See Riner, 351 F. Supp. 2d at 496; Guardian Life Ins. Co. of Am. v. Spencer, No. 5:10-00004, 2010 WL 3522131, *2 (W.D. Va. Sept. 8, 2010). In Spencer, this court concluded that a claim such as the one at issue here presented a federal question under ERISA because the insurance company was a fiduciary seeking other appropriate equitable relief under 29 U.S.C. §1132(a)(3). 2010 WL 3522131 at *2-3; see also Life Ins. Co. of N. Am. v. Camm, No. 4:02-00106, 2007 WL 2316480, *2 (S.D. Ind. Aug. 6, 2007).[4]

---

[4] Whether this case proceeds under diversity or federal question jurisdiction is immaterial to the ultimate result in this case. Virginia law prohibits the beneficiary of an insurance policy who kills the insured from receiving benefits under the insurance policy. See Va. Code Ann. § 55-411.A. ("Insurance proceeds payable to the slayer as the beneficiary or assignee of any policy or certificate of insurance or bond or other contractual agreement on the life of the decedent or as the survivor of a joint life policy shall be paid to the estate of the decedent, unless the policy or certificate designates some person as alternative beneficiary to him."). Virginia defines a "slayer" as "any person (i) who is convicted of the murder or voluntary manslaughter of the decedent or, (ii) in the absence of such conviction, who is determined, whether before or after his death, by a court of appropriate jurisdiction by a preponderance of the evidence to have committed one of the offenses listed in subdivision (i) resulting in the death of the decedent." Va. Code Ann. § 55-401.1. Courts are divided as to whether ERISA preempts a state slayer statute, and there is no controlling precedent as to whether ERISA preempts the Virginia slayer statute. See Riner, 351 F. Supp. 2d at 497 (quoting Addison v. Metro. Life Ins. Co., 5 F. Supp. 2d 392, 393 (W.D. Va. 1998)). Regardless, "even if ERISA preempts Virginia's slayer statute, it still would be inappropriate for the court to allow the slayer to benefit from his wrongdoing." Id. The ERISA statute is silent as to the distribution of benefits to a beneficiary responsible for killing the plan participant to obtain those benefits, requiring the court to turn to federal common law. "It has long been a principle of federal common law that . . . killers should not be rewarded with insurance benefits for taking a life . . . ." Admin. Comm. for the H.E.B. Inv. & Ret. Plan v. Harris, 217 F. Supp. 2d 759, 761 (E.D. Tex. 2002) (citing Mut. Life Ins. Co. v. Armstrong, 117 U.S. 591, 600 (1886) ("It would be a

Both the Riner and Spencer cases recently decided in this district bear some similarities to this case. Each of those cases involved an insurance company faced with competing claims for death benefits following the homicide of the policyholder. In each case, the court determined that it had subject matter jurisdiction to entertain the interpleader action, Riner on diversity grounds and Spencer on federal question grounds.[5] The court is satisfied that it has diversity jurisdiction over this case if it meets the requirements of Rule 22.[6]

**III.**

The next question to be addressed is whether this case is properly filed as an interpleader action under Rule 22. "A prerequisite for permitting interpleader is that two or more claimants must be 'adverse' to each other." Wright, Miller & Kane, supra, at § 1705. In United States v. High Technology Products, Inc., 497 F.3d 637 (6th Cir. 2007), the court described the stages of an interpleader action:

> An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has

---

reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken.")). Thus, whether this case proceeds under Virginia law based on the court's diversity jurisdiction or federal common law based on federal question jurisdiction, the result is the same. See Riner, 351 F. Supp. 2d at 497 ("It is not necessary for me to decide this issue because the outcome of this case is the same whether state or federal law applies–Riner is not entitled to the proceeds of the life insurance policy."). If Charles King is determined to be the slayer of Ann Gnegy King, his rights as beneficiary under the life and AD&D policies are extinguished, and the proceeds of the insurance policies will pass to a contingent beneficiary (if there is one) or to the Estate.

[5] While this case bears some similarities to Riner and Spencer, it is far different in other respects. In Riner, the husband was convicted in state court of murdering his wife and was ineligible under either Virginia or federal law from recovering the death benefits. Unlike in Riner, Charles King has not been charged with, much less convicted of, his wife's murder. At the same time, however, Hartford asserts that it has been told by the authorities that Charles King is a suspect in the ongoing homicide investigation. The procedural posture of this case also does not resemble Spencer. There, the husband initially submitted a claim for insurance benefits following his wife's homicide. While the husband was a person of interest in the ensuing homicide investigation, he never filed an answer in the interpleader action and a default judgment was entered against him. Thus, neither of these cases involved the situation presented here of a claim for insurance proceeds by a person who is a homicide suspect, but who is not charged or convicted of a crime implicating the slayer statute.

[6] Because the requirements of diversity jurisdiction are plainly met, and the ultimate result is the same regardless of which jurisdictional prong is invoked, the court need not decide whether ERISA also confers subject matter jurisdiction.

7

> properly invoked interpleader, including whether the court has
> jurisdiction over the suit, whether the stakeholder is actually
> threatened with double or multiple liability, and whether any
> equitable concerns prevent the use of interpleader. 7 Wright,
> Miller & Kane, supra, at § 1714. During the second stage, the
> court determines the respective rights of the claimants to the fund
> or property at stake via normal litigation processes, including
> pleading, discovery, motions, and trial. Id.

Id. at 641. This case is at the first stage, and as such, the court must determine whether this case involves competing claimants sufficient to meet the requirements of Rule 22. At this time, no one other than Charles King has filed a claim with Hartford or answered this lawsuit asserting an interest in the insurance proceeds. Ann Gnegy King's mother, Joan Gnegy, was present in the courtroom at the hearing held on January 13, 2012, and stated in response to a direct question from the court that she did not think that Charles King "should get the insurance because I think he killed Ann." (Dkt. #29, at 12, Lines 1-2.) Nevertheless, Joan Gnegy has not filed an answer in this case or otherwise indicated that she is claiming the insurance proceeds. On the other hand, nor has she expressly disclaimed an interest in the proceeds.

Charles King has moved for default judgment as a result of Joan Gnegy's failure to respond. (Dkt. #17.) The court cannot discern any reason to excuse Joan Gnegy's failure to file an answer in this case given her attendance at the hearing on January 13, 2012, and her statement made there that Charles King should not get the insurance. Although Joan Gnegy has not moved to file a late answer or otherwise formally respond to the interpleader complaint, her apparent interest in this case has not waned, as she ordered a copy of the hearing transcript. (Dkt. #28.) Joan Gnegy has been given ample opportunity to file an answer in this case, and for whatever reason has determined not to do so. She is in default, and the Order accompanying this Memorandum Opinion will direct the Clerk to enter her default under Rule 55(a).

Charles King takes the position that Joan Gnegy's default requires the entry of judgment in his favor and an order that the proceeds of the insurance policies be paid to him, as the only claimant. The court cannot do so based on this record. Even though Joan Gnegy has not filed an answer in her own right, if it is determined that Charles King is disqualified from recovering the insurance proceeds under the slayer statute, then those proceeds will flow to a contingent beneficiary (if there is one) or to the Estate. See Va. Code Ann. § 55-411.A. As Ann Gnegy King had no children and Joan Gnegy is her sole surviving parent, if Charles King cannot receive the insurance proceeds, Joan Gnegy is a likely candidate to receive them from the Estate.[7] Therefore, simply because Joan Gnegy has chosen not to participate personally in this action does not compel the conclusion that Charles King is the only claimant. Regardless of Joan Gnegy's default, the Estate has a potential claim to the insurance proceeds.

While the court has not located another case in Virginia or the Fourth Circuit on these precise facts, there are three recent cases out of Nebraska and California that bear a striking resemblance to this case.

In Vanderlinden v. Metropolitan Life Insurance Co., 137 F. Supp. 2d 1160 (D. Neb. 2001), the court rejected a request by a life insurance company to exercise interpleader jurisdiction, determining that it failed to establish that there were adverse claimants to the insurance monies. Id. at 1164. Loretta Vanderlinden was shot to death, and her husband Robert was a suspect in her murder. Id. at 1161-62. Robert sued MetLife in state court as beneficiary under the insurance policy, and MetLife removed the case to federal court and filed an interpleader counterclaim. Id. at 1161. MetLife's interpleader counterclaim named the husband, Loretta's estate, and her two adult children as defendants and potential claimants. Id. at 1162. In

---

[7] This analysis assumes, of course, that Joan Gnegy would take under the Estate. This assumption could be mistaken depending on the terms of Ann Gnegy King's will, the existence and terms of which the court is not privy.

9

a joint answer, the estate and the two children "specifically denied being claimants or potential claimants to the insurance proceeds." Id. The court framed the issue before it as follows:

> In order to be entitled to interpleader relief under Rule 22, MetLife must demonstrate that it "is or may be exposed to double or multiple liability." Although MetLife has alleged that there are or may be competing claims to the insurance proceeds, and has identified the decedent's estate and the Vanderlinden children as potential claimants, these parties have disavowed any interest in the insurance proceeds, and have prayed for dismissal of the third-party complaint.

Id. at 1163. Although the parties agreed that the insurance proceeds should be paid into the registry of the court and that MetLife be discharged from any further liability, the court declined to go along, determining that interpleader was not a proper procedure "because the requisite showing of potential adverse claimants has not been made." Id. at 1164. The Vanderlinden court concluded as follows:

> Even accepting as true MetLife's allegation, made on information and belief, that plaintiff remains a suspect in his wife's murder, it is obvious that the question of plaintiff's entitlement to the insurance proceeds will not be litigated in this action if MetLife is dismissed as a party. The other parties to the action have no legal dispute with each other, and they all request the same relief in their pleadings. Thus, without MetLife there is no case or controversy. See Financial Guar. Ins. Co. v. City of Fayetteville, Ark., 943 F.2d 925, 929 (8th Cir. 1991) ("For there to be a case or controversy, a federal court must, at a minimum, be presented with opposing parties representing adverse interests.").
>
> Jurisdictional issues aside, it is not the court's function to act as MetLife's disbursing agent by passing money to plaintiff through the registry.

10

Id. Depending on how the evidence sorts out in this case in the ensuing evidentiary hearing, a similar conclusion could be reached, requiring dismissal of the interpleader proceeding.[8]

On the other hand, two California federal courts reached a different conclusion and allowed interpleader actions to proceed under circumstances extraordinarily similar to those presented here. In United Investors Life Insurance Company v. Grant, No. 2:05-1716, 2006 WL 2308286 (E.D. Cal. Aug. 9, 2006), the court was faced with an interpleader action filed by a life insurance company that had issued a policy on the life of George Grant, the victim of an apparent homicide. Id. at *1. George Grant's widow, Donna Grant, was the beneficiary of the life insurance policy and made a claim for benefits. Id. Because Donna Grant had not been cleared as a suspect in her husband's murder, United Investors filed an interpleader action, asserting that it "had a bona fide concern of multiple liability if it was to pay Donna and she was subsequently found responsible for George's death." Id. at *2. None of the other defendants in the interpleader action filed answers, and defaults were entered against all of them. Id. at *1. As is the case here, Donna Grant argued that as the other defendants were in default, she was entitled to the proceeds. Id. The court disagreed, concluding that

> [E]ntering defaults against the named Defendants . . . does not preclude them from raising claims in the future. The defaults have not been reduced to judgment, and no potential contingent beneficiary has expressly waived his or her right to the insurance proceeds. As Donna correctly notes, any of the defaulted Defendants could move for the default to be set aside and could assert a claim in the funds at stake.

Id. Donna Grant's argument in support of her motion for summary judgment mirrors that of Charles King. She argued that in addition to the absence of any other claimants, her claim to the monies was established by the text of the insurance policy, which designated her as the

---

[8] That is particularly true as Hartford's complaint contains no suggestion that it undertook any independent investigation of Charles King's claim. Rather, it appears from the pleadings that all it did was make a few phone calls to the authorities in Montgomery County.

11

beneficiary; the lack of any evidence in the record that she was responsible for her husband's murder; and the fact that she had not been arrested or charged with the homicide. Id. The court declined to grant summary judgment for Donna Grant, ruling as follows:

> The existence of other potential claimants, combined with the circumstances of the case, creates enough factual uncertainty that the Court cannot as a matter of law award the proceeds to Donna. Even though no other claims have been made on the insurance proceeds, that could change if it is found that Donna was involved in the murder of George. Although there is no evidence before the Court implicating Donna in George's murder, the case investigators have not "cleared her as a suspect." . . . In the context of a summary judgment motion, the Court cannot say as a matter of law that there is only one valid claimant for the funds; multiple potential claimants exist as well. Even if Donna was the only possible claimant, her own claim is so clouded with uncertainty at this time that the Court cannot say as a matter of law that it is valid . . . .

Id. at *2.

The same situation was presented in Stonebreaker v. Pruco Life Insurance Co., No. 11-871, 2011 WL 5362067 (S.D. Cal. Nov. 4, 2011). There, Pamela Stonebreaker, who had not been ruled out as a suspect in her husband's murder, made a claim on his life insurance benefits. Id. at *1. Although no one else filed a claim, other contingent beneficiaries, presumably the Stonebreaker children, existed. Id. at *2. As the children did not expressly disavow their potential claims to the benefits, the court found interpleader to be an available remedy for the insurance company to pursue. Id. at *3. Apparently, Dr. Robert Stonebreaker was well insured, as evidenced by the fact that Pamela Stonebreaker also filed suit against three other insurance companies, each of whom responded by seeking interpleader. See Stonebreaker v. Guardian Life Ins. Co. of Am., et al., No. 11-797, 2012 WL 601422 (S.D. Cal. Feb. 23, 2012). As it did in the Pruco case, the court in Guardian Life distinguished the situation facing it from that presented in Vanderlinden. "In cases where there is a single claimant to a fund and all potential claimants

12

affirmatively disavow their interest in the fund, courts have found that the party seeking interpleader fails to meet its burden to demonstrate that it is entitled to interpleader." Id. at *4. As in Pruco, because the Estate of Robert Stonebreaker and the Stonebreaker children had potential claims to the benefits and had not expressly disavowed them, the court found interpleader to be proper. Id. at *6-8. The court granted the motions for discharge and dismissal of the insurance companies and denied Pamela Stonebreaker's motion for summary judgment, concluding that "[a]ll potential claimants are entitled to have an opportunity to make a claim to the interpleaded funds." Id. at *9.

      Considering these cases, the court believes that further factual development is necessary in this case. On the present record, the court is uncertain as to just what the position of Joan Gnegy is as regards the insurance proceeds. On the one hand, she has not made an affirmative claim for the insurance monies nor has she filed an answer in this case. As such, she finds herself much in the same shoes as the potential claimants in Grant. On the other hand, she has not disavowed her interest in the insurance monies as was the case in Vanderlinden. Nor does the court know whether there are other potential claimants who would take through the Estate if Charles King is disqualified from receiving any benefits. These threshold issues, bearing on the question whether adverse claims to the interpleaded funds exist, need to be resolved before the court can determine whether this case is properly filed under Rule 22.

      Therefore, the court believes that an evidentiary hearing should be held in this case to take evidence on a number of issues relevant to the exercise of its jurisdiction and resolution of this case. First, the court needs to hear evidence as to whether Joan Gnegy is asserting a claim to the insurance proceeds or is disavowing any interest in the insurance monies.[9] Second, the court

---

[9] At the January 13, 2012, hearing, the court took Joan Gnegy's presence in the courtroom and her statement that "I don't think he should get the insurance, because I think he killed Ann" to indicate her interest in filing a claim.

13

must determine whether there are any other potential claimants, such as contingent beneficiaries on the insurance policy, legatees under the will of Ann Gnegy King, or any other persons who would take under the Estate if Charles King is disqualified.  Third, the court needs to hear evidence regarding the extent of any investigation done by Hartford as to the murder of Ann Gnegy King to see if there is credible support for its alleged concern that Charles King may be Ann Gnegy King's slayer.[10]  Finally, the court needs to hear evidence so as to enable it to make a determination under Virginia Code § 55-401.1, by a preponderance of the evidence, as to whether Charles King is the slayer of Ann Gnegy King, as that term is defined in the statute.

To that end, the court believes that it is appropriate that an evidentiary hearing be convened in this case to resolve these issues.  Such a hearing will be heard by United States Magistrate Judge Robert S. Ballou, to whom all pretrial motions are being referred in the accompanying Order.

## IV.

Finally, as the court noted at the hearing on January 13, 2012, the court does not believe that counsel for Charles King may also represent the Estate as the docket presently reflects.  Although Charles King asserts that there is no conflict of interest because Charles King is the Executor of the Estate and Joan Gnegy has not filed an answer, the court believes that a potential conflict of interest exists preventing one lawyer from representing both Charles King and the Estate.  Because Joan Gnegy may take under the Estate and is firmly at odds with Charles King,

---

However, despite the court's urging that Joan Gnegy obtain counsel and file an answer to the lawsuit, she has not done so, perhaps suggesting the contrary.  Given the Vanderlinden, Grant, and Stonebreaker precedent, the court believes that further clarification of the position of Joan Gnegy is required.

[10] See, e.g., Equitable Life v. Jones, 679 F.2d at 360 (("It is well-settled that interpleader is not available when one of the two 'conflicting claims' is of such ethereal gossamer as to be totally devoid of substance." (Murnaghan, J., dissenting)); John Hancock Mut. Life Ins. Co. v. Beardslee, 216 F.2d 457, 460 (7th Cir. 1954) ("It is true that to justify a bill of interpleader the conflicting claims against the funds need not be such claims as can finally be proved in court.  However, to justify an insurance company in bringing such an action the claims must be of more substance than the alleged claim of the defendant . . . on which the plaintiff here relied." (internal citation omitted)).

14

the same lawyer cannot represent both the Estate and Charles King personally. See Virginia Rule of Professional Conduct 1.7. In that regard, the answer filed by Charles King, Executor of the Estate, on October 31, 2011, makes the court's concerns manifest. In that answer, Charles King simply asserts that he did not kill his wife and that he should receive the insurance proceeds. (Dkt. #14.) Further complicating the issue is the fact that if Charles King is determined to be Ann Gnegy King's slayer, he cannot serve as executor of her estate as he is deemed by operation of law to have predeceased her.[11] See Va. Code Ann. § 55-410.

## V.

As noted above, Charles King has not been charged with, much less convicted of, the murder or voluntary manslaughter of Ann Gnegy King. Under Virginia law, however, Charles King may not benefit from the insurance proceeds if he is determined by a court of appropriate jurisdiction by a preponderance of the evidence to have committed the murder or voluntary manslaughter of Ann Gnegy King. See Va. Code Ann. § 55-401.

Therefore, although Joan Gnegy has not filed an answer, the entry of default against her does not resolve this case. The court must properly address the issues noted herein and determine whether this case properly falls within the scope of Rule 22. If the court concludes that the requirements of Rule 22 are met, the court must then make the determination required under § 55-401.1 before it can determine the appropriate disposition of the proceeds of the Hartford life and AD&D policies.

---

[11] Charles King may have a similar and equally irreconcilable conflict serving as the executor of his wife's estate, if, indeed, the evidence establishes him to be the slayer. However, a federal court cannot compel Charles King to step aside as executor of his wife's estate because it has no jurisdiction regarding matters of a purely probate nature. Markham v. Allen, 326 U.S. 490, 494 (1946). See also Jones v. Harper, 55 F. Supp. 2d 530 (S.D. W.Va. 1999) (refusing to remove executor of estate who would not pursue a wrongful death action against a putative tortfeasor).

An appropriate Order will be entered.

                                        Entered: April 30, 2012

                                        /s/ Michael F. Urbanski

                                        Michael F. Urbanski
                                        United States District Judge